NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JAGTAR SINGH,<br><br>        Plaintiff,<br><br>  v.<br><br>JOHN THOMPSON and UNITED STATES CITIZENSHIP & IMMIGRATION SERVICES,<br><br>        Defendants. | Civil Action No. 15-8063 (SRC)<br><br>OPINION |

**CHESLER**, District Judge

  This matter comes before the Court upon the motion to dismiss or, in the alternative, for summary judgment filed by Defendants, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56. Plaintiff Jagtar Singh has opposed the motion. The Court has considered the papers filed by the parties. For the reasons that follow, the Court will grant Defendants' motion for summary judgment.

**I. BACKGROUND**

  Plaintiff challenges the denial of his naturalization application by U.S. Citizenship and Immigration Services ("USCIS") on the grounds that (1) Singh was never "lawfully admitted" for permanent residence and (2) was not a person of good moral character. The following facts are not in dispute.

  Singh arrived in the United States on or around September 18, 1992, at John F. Kennedy International Airport. Singh requested political asylum. On October 13, 1992, Singh was issued

1

a Form I-122 Notice to Applicant for Admission Detained/Deferred for Hearing Before Immigration Judge. When he failed to appear for a scheduled hearing, the Immigration Judge issued an exclusion order in absentia. Singh filed a motion to reopen together with an Application for Asylum (Form I-589). In the application, Singh listed his birthday as May 13, 1972, his date of arrival as September 25, 1992, and the place of arrival as JFK, New York. The Immigration Judge granted the motion to reopen, but entered another exclusion order in absentia when Singh again failed to attend a hearing. This time, Plaintiff's motion to reopen was denied.

Plaintiff subsequently moved to California. On July 3, 1996, he submitted a second Form I-589 without disclosing his prior application. This time, Singh provided a different birthdate of May 9, 1971; indicated that his last entry to the United States was on March 13, 1996, without inspection in Blaine, Washington; and did not provide his assigned Alien Registration Number. In response to a question asking whether Singh had ever filed for asylum, he checked "No." In a statement establishing the basis of his claim, Singh stated that he was arrested and tortured in police custody on February 7, 1996, (when he was in fact residing in the United States). Plaintiff's asylum application was granted on August 12, 1996.

Approximately five years later, Singh applied to adjust his status to lawful permanent resident ("LPR"). On his Form I-485, Plaintiff repeated the biographical information from the second asylum application together with the falsified date and place of arrival. Singh answered "No" to Part 3, Question 10, asking whether he had ever by fraud or willful misrepresentation of a material fact, sought to procure, or procured any immigration benefit. USCIS approved Singh's LPR application on October 7, 2005, with the effective date of LPR status rolled back to November 7, 2004.

In 2012, Singh filed for naturalization. Again he answered "No" to a question asking whether he had ever given false or misleading information to any U.S. Government Official while applying for any immigration benefit. Plaintiff also indicated that he had never been ordered excluded from the United States. According to a declaration submitted by USCIS Immigration Services Officer Robert Goldstein, who interviewed Singh on May 7, 2013, Singh reiterated, under oath, that he had never given false or misleading information to any US Government Official while applying for any immigration benefit.[1] (Goldstein Decl. ¶¶ 3-6.)

USCIS denied Singh's application on June 28, 2013. The decision explained that Singh was not eligible for naturalization because he had not been lawfully admitted for permanent residence on account of fraud committed in connection with his applications for asylum and permanent residency. Specifically, USCIS noted that Singh lied about his entry date and failed to disclose the denial of his first asylum application when he submitted his second filing and again when he applied for LPR status. The Service's lack of knowledge of these facts resulted in an unwarranted grant of asylum and permanent residence.

Plaintiff requested a hearing to contest the decision. Singh did not deny the deficiencies of his application, but claimed that USCIS was precluded from challenging his permanent resident status by a five-year statute of limitations. During the review hearing, Singh admitted to several falsifications in his applications for asylum, LPR status, and naturalization, including providing a false date of entry, lying about being in India between 1992 and 1996 at the time of his claimed persecution, failing to disclose his first asylum application, and failing to disclose past use of misrepresentations to obtain immigration benefits. On July 17, 2014, USCIS affirmed the denial,

---

[1] Singh has not submitted any evidence to dispute Officer Goldstein's account.

expanding the reasons to additionally include Plaintiff's failure to establish that he was a person of good moral character.

In the operative Amended Complaint, Plaintiff seeks *de novo* review of the naturalization denial, pursuant to 8 U.S.C. § 1421(c).[2] Plaintiff alleges that (1) USCIS is barred from challenging his status as an alien lawfully admitted to permanent residence by a five-year statute of limitations; (2) the denial was erroneous because a person subject to an exclusion order may adjust status to permanent residence; and (3) that he had never made a materially false statement or given false testimony with the intent of obtaining an immigration benefit, and had a valid claim for asylum as a member of the Sikh community in India. This case is before the Court upon Defendants' motion to dismiss, or in the alternative, for summary judgment. Because the Court considers evidence outside the pleadings, the Court will decide the motion as a motion for summary judgment and will grant summary judgment in favor of Defendants.

## II. DISCUSSION

### A. Legal Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (construing the similarly worded Rule 56(c), predecessor to the current summary judgment standard set forth in Rule 56(a)). A factual dispute is genuine if a reasonable

---

[2] "A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." 8 U.S.C. § 1421(c).

4

jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. "When the moving party has the burden of proof at trial, that party must show affirmatively the absence of a genuine issue of material fact: it must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)). In considering a motion for summary judgment, a district court "must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). It may not make credibility determinations or engage in any weighing of the evidence. *Anderson*, 477 U.S. at 255; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (holding same).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish the existence of a genuine issue as to a material fact. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir.2001), overruled on other grounds by *Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emp'rs*, 134 S.Ct. 773 (2014). However, the party opposing the motion for summary judgment cannot rest on mere allegations; instead, it must present actual evidence that creates a

5

genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990) (holding that "unsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment").

### B.  Singh's Naturalization Application

The procedure for obtaining naturalization is set out in the Immigration and Nationality Act ("INA").  "A person may only be naturalized as a citizen of the United States in the manner and under the conditions prescribed[.]"  8 U.S.C. § 1421(d).  "No alien has the slightest right to naturalization unless all statutory requirements are complied with[.]"  *Fedorenko v. United States*, 449 U.S. 490, 506 (1981) (quoting *United States v. Ginsberg*, 243 U.S. 472, 474-475 (1917)).  The applicant bears the burden of proving compliance.  8 C.F.R. § 316.2(b).  As relevant here, Singh must demonstrate that (1) he has been lawfully admitted for permanent residence and (2) "has been and still is a person of good moral character[.]"  8 U.S.C. § 1427(a); 8 C.F.R. § 316.2(a)(2), (7).

#### a.  *Lawful Admission for Permanent Residence*

"[L]awfully admitted for permanent residence" is defined as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws[.]"  8 U.S.C. § 1101(a)(20).  This requires "strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship."  *Fedorenko*, 449 U.S. at 506.  Lawful admission "denotes compliance with substantive legal requirements, not mere procedural regularity[.]"  *Matter of Longstaff*, 716 F.2d 1439, 1441 (5th Cir. 1983).  Thus, an alien who had obtained their LPR status by fraud, or was otherwise not entitled to it, had never been lawfully admitted.  *See In Re Koloamatangi*, 23 I. & N. Dec. 548, 550 (BIA 2003).  The LPR status is "void *ab initio*."  *Gallimore v. Attorney Gen.*, 619 F.3d 216, 224 n.6 (3d Cir. 2010) (quoting *Shin v. Holder,* 607 F.3d 1213, 1217 (9th Cir.2010)).

Singh was not entitled to attain LPR status because it rested on an invalid grant of asylum. Because Singh's first asylum application had been denied and he was subject to exclusion proceedings[3] at the time of filing, INS did not have jurisdiction to consider his second application. *See* 8 C.F.R. § 208.2(b); 8 C.F.R. 208.4 (1996); *cf. Koszelnik v. Sec'y of Dep't of Homeland Sec.*, — F.3d —, —, 2016 WL 3648369, at *3 (3d Cir. 2016). For this reason, the asylum and subsequent adjustment of status were not granted in strict compliance with the law, which in turn means that Singh was never lawfully admitted for permanent residence.

Additionally, Singh was not entitled to LPR status because he was inadmissible at the time of adjustment to permanent residence on account of having procured an immigration benefit by fraud or willful misrepresentation of material fact. 8 U.S.C. § 1159(b)(5); 8 U.S.C. § 1182(a)(6)(C)(i). A misrepresentation is material if it "was predictably capable of affecting," that is had "a natural tendency to influence the decisions of the Immigration and Naturalization Service." *Kungys v. United States*, 485 U.S. 759, 771-72 (1988). Such influence can be found if either (1) the alien is excludable on the true facts, or (2) the misrepresentation tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might well have resulted in a proper determination that he be excluded. *Mwongera v. I.N.S.*, 187 F.3d 323, 330 (3d Cir. 1999). Singh impeded INS's ability to learn of his exclusion order and prior denial of asylum by providing a false date and place of entry, using a different date of birth, and stating that he had never previously filed for asylum.

---

[3] Count Two of Singh's Amended Complaint alleges that denial of naturalization was legally erroneous because an alien subject to an exclusion order may adjust status to permanent residence. That is correct, undisputed, and irrelevant. Plaintiff's naturalization was not denied because he was subject to an exclusion order but, in part, because USCIS was unaware of the existence of the order.

7

Moreover, Plaintiff's second claim for asylum rested on an invented incident of persecution. During the time when Singh alleged to have been tortured in India on account of imputed political opinion (a ground Singh provided for seeking asylum), Singh was living in the United States. INS would not have granted Singh's asylum application had it known the true facts. In applying for LPR status, Singh continued to lie by denying that he had procured or sought to procure an immigration benefit by fraud or material misrepresentation.

When Singh finally told the truth during his N-336 denial of naturalization review hearing, Singh admitted that he offered false information in order to remain in the United States. (Borgen Decl. Ex. N.) That is, he misrepresented material facts for the purpose of obtaining immigration benefits. This made Singh inadmissible at the time of obtaining his LPR status,[4] 8 U.S.C. § 1182(a)(6)(C)(i), which in turn made him ineligible for naturalization because he was never lawfully admitted to permanent residence.[5] 8 U.S.C. § 1427(a).

Singh errs in relying on the trio of *Garcia v. Attorney General*, 553 F.3d 724 (3d Cir. 2009), *Matter of Pena*, 26 I. & N. Dec. 613 (BIA 2015), and *Matter of Ayala*, 22 I. &N. Dec. 398 (BIA 1998), to argue that USCIS's failure to rescind his LPR status within five years of adjustment precludes USCIS from reexamining the validity of Singh's permanent residency in deciding whether he is eligible for naturalization. The five year bar limits the time to rescind an applicant's permanent resident status if it is later discovered that the person was not eligible for adjustment. *See* 8 U.S.C. § 1256(a). "[T]he plain language of the statute does not in any way contemplate

---

[4] Singh never sought an inadmissibility waiver.
[5] In opposition to Defendants' motion, Singh requests discovery to determine whether, without lying, he may nevertheless have been able to establish eligibility for asylum on the basis of his second ground for seeking asylum as a member of the persecuted Sikh minority in India. Whether or not there existed a set of facts that may have made him eligible for asylum is immaterial. It does not negate the fact that Singh's LPR status, in the manner actually obtained, was unlawful.

extension of the limitations period to the naturalization process." *Saliba v. Attorney Gen.*, — F.3d —, —, 2016 WL 3648469, at *10 (3d Cir. 2016) (quoting *Jin Mei Lin v. Napolitano*, 11-cv-6373, 2013 WL 2370588, at *5 (E.D. Pa. May 31, 2013)); *Koszelnik*, 2016 WL 3648369, at *4. Nor is there any reason why it should. The statute of limitations protects noncitizens from the harsh fallout of losing the security of their resident status and facing delayed onset deportation, which may cost them their jobs, homes, and families. *Bamidele v. I.N.S.*, 99 F.3d 557, 564 (3d Cir. 1996). The denial of naturalization does not trigger such consequences. Naturalization is not a right but a privilege conferred only on persons who are in "strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship." *Fedorenko*, 449 U.S. at 506. The running of time does not impart legality onto a person's otherwise unlawful admission. *Saliba*, 2016 WL 3648469, at *11. A person who was never lawfully admitted for permanent residence does not have the right to keep profiting from a status procured by fraud or mistake.

b. *Good Moral Character*

As an independent ground for denial, USCIS specified that Singh failed to demonstrate himself to be a person of good moral character. To naturalize, a resident must show that "during all the periods referred to in this subsection [he] has been and still is a person of good moral character . . . ." 8 U.S.C. § 1427(a)(3). "[Giving] false testimony for the purpose of obtaining any benefits under this chapter" is fatal to establishing good moral character. 8 U.S.C. § 1101(f)(6). USCIS noted that Plaintiff provided false testimony under oath during his May 7, 2013, naturalization interview when he swore that all of his submission materials where true and correct. (Goldstein Decl. ¶¶ 5, 6.) They were not. On his Form N-400, Plaintiff falsely stated that he has never given false or misleading information to any U.S. Government Official while applying for

9

any immigration benefit or to prevent deportation, exclusion, or removal. When the interviewing officer orally asked the same question, Singh again responded in the negative.[6] (*Id.*)

The preclusion in § 1101(f)(6) applies to "testimony" – that is "oral statements made under oath," and not "other types of misrepresentations or concealments, such as falsified documents or statements not made under oath." *Kungys*, 485 U.S. at 780. It also "applies to only those misrepresentations made with the subjective intent of obtaining immigration benefits." *Id.* There is no requirement for the testimony to be material. *Id.* at 779-80. That Plaintiff had the requisite intent is evident from his admissions during his N-336 hearing:

> Q. . . . On the N-400 application you . . . were asked: "Have you ever given false or misleading information to any U.S. Government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal?" [Y]ou answered "No[.]" You also were asked, "Have you ever lied to any U.S. Government official to gain entry or admission into the U.S.?" Your response was "No." Why did you fail to indicate on the N-400 and during your N-400 interview (on 5/7/2013) that you had filed multiple asylum applications?
>
> A. Honestly, I've been waiting for this for past 20 years. I honestly just want to stay in the U.S.

(Borgen Decl. Ex. N.)

In his defense, Singh argues that "testimony" is limited to statements offered in adversarial or trial-type proceedings and excludes statements given to USCIS officers. The Court is unpersuaded by this distinction, which has been consistently rejected by holdings that "statements made by an applicant in a naturalization examination are 'testimony' within the meaning of 8

---

[6] Notwithstanding a conclusory pleading, which carries no weight, that Singh at no time made a materially false statement or gave false testimony with the intent to obtain an immigration benefit, (Am. Compl. ¶ 12), Singh provided no evidence to dispute Officer Goldstein's account of the interview. That Singh in fact did make materially false statements with the intent to obtain immigration benefits is clearly supported by the record. (*See* Borgen Decl. Ex. N.)

U.S.C. § 1101(f)(6)."[7] *Bernal v. I.N.S.*, 154 F.3d 1020, 1023 (9th Cir. 1998) (emphasizing that "[a]n INS officer is authorized 'to take testimony concerning any matter touching or in any way affecting the admissibility of any applicant for naturalization, [and] to administer oaths.'") (quoting 8 U.S.C. § 1446(b)); *Medina v. Gonzales*, 404 F.3d 628, 636 (2d Cir. 2005) ("we see no reason why oral statements must, as a matter of law, be made in adversarial proceedings in order to qualify as 'testimony.'"); *In re Haniatakis*, 376 F.2d 728, 730 (3d Cir. 1967) (false statements given orally before an officer duly authorized to administer oaths constitute false testimony); *In Re R-S-J-*, 22 I. & N. Dec. 863, 866 (BIA 1999) ("false statements made under oath during an interview regarding an application for naturalization have been consistently held to constitute false testimony.").

Thus, the responses that Plaintiff offered during his N-400 interview are "testimony" for the purposes of the statute, and Plaintiff provided false testimony to Officer Goldstein during his naturalization interview with the intent of securing an immigration benefit. He was thus separately not entitled to naturalization for failure to establish good moral character.

Finally, Plaintiff attempts to couch the admissions made during his N-336 hearing as voluntary retractions prior to exposure, which may remedy the provision of false testimony under oath. *See Costa v. Attorney Gen.*, 257 F. App'x 543, 546 (3d Cir. 2007) ("8 U.S.C. § 1101(f)(6) does not bar a person from establishing good moral character when he has 'voluntarily and prior to any exposure of the attempted fraud corrected his testimony.'") (quoting *Matter of M,* 9 I. & N. Dec. 118, 119 (BIA 1960)). Admitting the truth after USCIS discovered the misstatements and

---

[7] Plaintiff invokes the rule of lenity to advance an interpretation of the statute in his favor because "deportation is a drastic measure[.]" (Pl.'s Br. at 11.) Plaintiff is not being deported.

11

denied Plaintiff's N-400 application is not a voluntary retraction prior to exposure. Such a confession does not mitigate Singh's earlier deception.

### III. CONCLUSION

USCIS has shown that it is entitled to judgment as a matter of law, and Singh has failed to raise any material factual dispute. For the foregoing reasons, the Court will **GRANT** Defendants' motion for summary judgment and judgment will be entered in favor of Defendants. An appropriate Order will be filed.

    s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: September 16, 2016